IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| NATIONWIDE MUTUAL INSURANCE COMPANY and AMCO INSURANCE COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> MONTE JEAN SMITH, individually; MONTE JEAN SMITH, as trustee of the Monte Jean Smith Revocable Trust dated April 17, 2001; HY GRADE CONSTRUCTION AND MATERIALS, INC.; MARY JO BRADSHAW; and STEPHEN L. BRADSHAW, as Special Administrator for the Estate of Lewis K. Bradshaw, <br><br> Defendants. | Case No. 11-1266-JAR-GLR |

## MEMORANDUM AND OPINION

Plaintiffs Nationwide Mutual Insurance Company and AMCO Insurance Company filed this lawsuit, seeking a declaration that certain farm liability policies do not provide coverage for the losses arising from a fatal injury suffered by Lewis J. Bradshaw on property owned by Hy Grade Construction and Materials while he was working for Hy Grade, or for any of the claims, injuries and damages alleged in Neosho County Case No. 2010 CV 109, and that Plaintiffs have no contractual duty to defend Defendants in that state court action. On February 28, 2014, this Court granted Defendants' Motion for Stay of Declaratory Judgment Proceedings pending the state court determination of liability (Doc. 92). After the Kansas Court of Appeals affirmed the district court's grant of summary judgment in favor of defendants Monte Jean Smith and Hy

1

Grade Construction and Materials, Inc., and the Kansas Supreme Court denied the Bradshaw plaintiffs' Petition for Review,[1] the Court held a status conference with the parties in this declaratory judgment proceeding. The parties advised the Court that the duty to defend issue has been resolved, but because the Policies at issue include a provision for reimbursement of attorney's fees for defending this action, the issue remains for this Court to determine whether coverage extends to Defendants.

Accordingly, this matter is again before the Court on Plaintiffs' Motion for Summary Judgment (Doc. 58) and Motion to Strike its Demand for Jury Trial (Doc. 56). For the reasons explained in detail below, the Court denies Plaintiffs summary judgment on the issue of coverage and denies without prejudice its motion to strike demand for jury trial.[2]

## I. Summary Judgment Standard

Summary judgment is appropriate if the moving party "shows that there is no genuine issue as to any material fact and that [it] is entitled to judgment as a matter of law."[3] A fact is only material under this standard if a dispute over it would affect the outcome of the suit.[4] An issue is only genuine if it "is such that a reasonable jury could return a verdict for the nonmoving party."[5] The inquiry essentially determines if there is a need for trial, or whether the evidence "is so one-sided that one party must prevail as a matter of law."[6]

The moving party bears the initial burden of providing the court with the basis for the

---

[1] Doc. 109.

[2] Because the only remaining issue before the Court is coverage under the Policies, the Bradshaw Defendants' Motion to Strike the Affirmative Defense of Smith and Hy Grade (Doc. 60) is moot.

[3] Fed. R. Civ. P. 56(a).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] *Id.*

[6] *Id.* at 251–52.

motion and identifying those portions of the record that show the absence of a genuine issue of material fact.[7] Where, as here, the movant bears the burden of proof on a claim or defense, it must show that the undisputed facts establish every element of the claim entitling it to judgment as a matter of law.[8] If the moving party properly supports its motion, the burden shifts to the non-moving party, "who may not rest upon the mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."[9] In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[10] If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted.[11] A party opposing summary judgment "cannot rely on ignorance of the facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."[12] Put simply, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts."[13]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[14]

---

[7]*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[8]*See id*. at 331 ("If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence—using any of the materials specified in Rule 56(c) that would entitle it to a directed verdict if not controverted at trial.").

[9]*Muck v. United States*, 3 F.3d 1378, 1380 (10th Cir. 1993).

[10]*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).

[11]*Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 533 (10th Cir. 1994).

[12]*Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1998), *aff'd* 939 F.2d 910 (10th Cir. 1991).

[13]*Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[14]*Celotex,* 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

**II      Uncontroverted Facts**

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to the non-moving parties.

Hy Grade Construction and Materials, Inc. ("Hy Grade") was started by Monte Jean Smith's ("Smith") father as a construction company in the 1950's. Hy Grade's main asset is land consisting of a pecan grove (the "Ponderosa"), some land leased for cattle, and a small amount of land leased for farming. Hy Grade was held in a trust set up by Smith's father; after his death in 2001 or 2002, Hy Grade was transferred to Smith, who took over as President of the company.

Nationwide Mutual Insurance Company ("Nationwide") issued a farm liability policy (the "Farm Liability Policy") to Smith, listing Hy Grade and the Trust as additional insureds. AMCO Insurance Company ("AMCO") issued a farm umbrella liability policy (the "Farm Umbrella Liability Policy") to Smith listing Hy Grade and the Trust as additional insureds. The Ponderosa was listed as part of the insured premises under both policies, and both policies had a term of April 11, 2008 to April 11, 2009.

The Farm Liability Policy excluded coverage for:

**Employers' Liability**

"Bodily injury" sustained by:

1) Any "employee" (other than a "residence employee") as a result of his or her employment by the insured;

2) any "residence employee", unless the "employee" makes a written claim or brings "suit" no later than 36 months after the end of the policy period; or

3) The spouse, child, parent, brother or sister of any "employee" as a consequence of "bodily injury" to that "employee".

> This exclusion applies whether the insured may be held liable as an
> employer or in any other capacity and to any obligation to share damages
> with or repay someone else who must pay damages because of the injury.
> The only exceptions to this exclusion are in "occurrences" of
> "bodily injury" for which the insured has assumed liability under
> an "insured contract".

The Farm Umbrella Liability Policy excluded coverage for:

> **Employee Injury**
> a. any injury to an "employee" of the "insured"
> arising out of and in the course of
> employment by the "insured"; or
>
> b. any injury to the spouse, child, parent,
> brother, or sister of that "employee" as a
> consequence of a. above.

Both policies include a "Separation of Insureds" clause, which state:

> Except with respect to the Limits of Insurance, and any rights or
> duties specifically assigned . . . to the first Named Insured, this
> insurance applies:
>
> (a) as if each Named Insured were the only Named
> Insured; and
>
> (b) separately to each "insured" against whom claim is made or
> "suit" is brought.

On November 8, 2008, Lewis J. Bradshaw ("Bradshaw") was clearing brush between rows of pecan trees on the Ponderosa and was burning a brush pile. While clearing and burning the brush, there was an explosion that caused Bradshaw to suffer "major injury" that ultimately resulted in his death the next day.

On November 5, 2010, Mary Jo Bradshaw, the widow of Bradshaw, and Stephen L. Bradshaw, the Special Administrator of Bradshaw's estate, filed suit against Smith, the Trust and Hy Grade in Neosho County District Court (the "State Court Action"), seeking survival and wrongful death damages as a result of Bradshaw's accident. Smith and Hy Grade contend that

Bradshaw was using explosives without the permission of either Smith or Hy Grade.

Bradshaw had a business relationship with Hy Grade since 1950 or 1952, having started with the company right out of high school. Bradshaw worked for Hy Grade at the Harry Byers rock quarry, and continued to work for Harry Byers after Hy Grade transferred its interest prior to the time Smith acquired her interest in Hy Grade. At the time of his injury, Bradshaw worked for Michael Beacher at a rock quarry in Coffeyville, Kansas. When Smith took over the operations of Hy Grade, Bradshaw was doing work for Hy Grade one to three days per month, except during the mowing season. Bradshaw maintained the equipment, changed oil, cleared brush, and bulldozed. Smith testified that Bradshaw was his own boss because he had worked for the company for so many years that he knew what needed to be done. Bradshaw determined the number of hours that he worked on any given day or during any given month, and would determine how many hours he needed to work in order to finish the job or duties Smith expected him to complete. Bradshaw would turn his hours in to the office, and was paid an hourly wage every two weeks, if he worked any hours. Hy Grade also paid Bradshaw to cover his health insurance; it did not maintain a health insurance plan. Hy Grade issued Bradshaw a W-2 at the end of each year and he was listed on the company's payroll records for 2008. Bradshaw did not share in Hy Grade's profits or losses. When Bradshaw did work for Hy Grade, he used the company's equipment.

Hy Grade did not have a written agreement with Bradshaw concerning the work he was to do for Hy Grade after Smith took over the business. Smith testified that she could not be Bradshaw's boss because he had a better working knowledge and understanding of what needed to be done than she did. Bradshaw did what he wanted to do, for the benefit of Hy Grade. Smith never gave Bradshaw any directions or instructions about how to do his job, nor did anyone else.

Hy Grade did not have a policy, procedure, or instructions for Bradshaw regarding what work to do. Hy Grade was not unhappy with Bradshaw's work. Bradshaw would from time to time hire a company to grind tree stumps, and Hy Grade would pay that company.

Smith makes the overall management decisions for the operation of Hy Grade. As president of Hy Grade, Smith did not exercise her right to tell Bradshaw what to do because he knew more about his work than she did. Smith believed that she had the right to terminate the relationship between Hy Grade and Bradshaw, if she wanted to, but would not have because of his longevity, and because Bradshaw was the "backbone" of the company. Likewise, Bradshaw could have ended his relationship with Hy Grade by telling Smith he was no longer going to work for Hy Grade. Smith testified that when she bought the insurance policies at issue in this case, she wanted to make sure an incident like Bradshaw's injury would be covered, and specifically asked for that.

Smith testified that had she known that Bradshaw intended to use explosives, she would not have allowed it. Smith is not aware of anyone having previously used explosives on the Hy Grade property. From the time Smith became president of Hy Grade, Bradshaw never used explosives for clearing brush on Hy Grade property. Smith did not tell Bradshaw that he was forbidden from using explosives while doing work for Hy Grade.

The underlying State Court Action was filed November 5, 2010, and at the time Plaintiffs filed their motion for Summary Judgment, was scheduled for trial in November 2013. Plaintiffs have never refused to provide a defense in the State Court Action, and the attorney hired by Plaintiffs continues to represent Smith and Hy Grade in that case. After the matter went under advisement, the State Court trial was continued until September 2014, and the Smith Defendants' motion to stay the proceedings was granted. The state district court granted summary judgment

7

to Hy Grade and Smith, and the Bradshaws appealed. The Kansas Court of Appeals affirmed the district court's ruling, finding no breach of the landowner's duty of reasonable care and no evidence the landlord engaged in an abnormally dangerous activity.[15]

## III. Discussion

### A. Coverage Under the Policies

Under Kansas law, "[a]n insurance company seeking to avoid liability under an exclusionary clause in its policy for a loss which is otherwise covered has the burden of proving that the loss falls within the exclusion."[16] Plaintiffs thus have the burden to prove that this case falls under the employee injury exclusion in their policies. To do so, Plaintiffs must establish that Lewis Bradshaw was a Hy Grade employee at the time of his injury, and that his injury arose and resulted from such employment.

Plaintiffs argue that the employee injury exclusion applies because Bradshaw was an employee of Hy Grade; Defendants counter that a reasonable trier of fact could conclude that Bradshaw was an independent contractor at the time of his injury. Whether an individual is an employee or an independent contractor generally is a question of fact for the jury.[17] In *Falls v. Scott*,[18] the Kansas Supreme Court defined an independent contractor and stated how the determination is to be made as follows:

> An independent contractor is defined as one who, in exercising an independent employment, contracts to do certain work according to his own methods, without being subject to the control of his employer, except as to the results or product of his work. The

---

[15]*Bradshaw v. Smith,* 382 P.3d 467 (Table), 2016 WL 4413956 (Kan. Ct. App. 2016), *rev. denied* (May 24, 2017).

[16]*Alliance Life Ins. Co. v. Ulysses Volunteer Fireman's Relief Ass'n*, 529 P.2d 171, 173 (Kan. 1974).

[17]*McCubbin v. Walker*, 886 P.2d 790, 795 (Kan. 1994).

[18]815 P.2d 1104 (Kan. 1991).

primary test used by the courts in determining whether the employer-employee relationship exists is whether the employer has the right of control and supervision over the work of the alleged employee, and the right to direct the manner in which the work is to be performed, as well as the result which is to be accomplished. It is not the actual interference or exercise of the control by the employer, but the existence of the right or authority to interfere or control, which renders one a servant rather than an independent contractor.[19]

In addition to the general rule, the Restatement (Second) of Agency § 220(2) sets out several relevant factors to be considered in deciding whether one is an employee or an independent contractor:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed in engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;
> (e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;
> (f) the length of time for which the person is employed;
> (g) the method of payment, whether by the time or by the job;
> (h) whether or not the work is a part of the regular business of the employer;
> (i) whether or not the parties believe they are creating the relation of master and servant; and
> (j) whether the principal is or is not in business.[20]

The Kansas Supreme Court has indicated that the Restatement factors should be considered in determining the issue in question.[21]

"Where the facts are undisputed or the evidence is susceptible of only a single

---

[19]*Id*. at 1112 (citing *Wallis v. Sec'y of Kan. Dep't of Human Res.*, 689 P.2d 787, Syl. ¶¶ 3, 5 (Kan. 1984)).

[20]Restatement (Second) of Agency § 220 (1958).

9

conclusion, it is a question of law for the court whether one is an employee or an independent contractor. However, generally speaking, the question of whether an individual is an employee or an independent contractor is considered a question of fact for the jury or trier of facts."[22]

Applying this standard to the present matter, and applying the relevant inferences in favor of Defendants as the non-moving parties, the Court finds that summary judgment in favor of Plaintiffs is not appropriate. Although Plaintiffs contend that "without question," Smith had the ability to control Bradshaw's day-to-day tasks, there is also evidence that Bradshaw was his own boss, and was "driving his own bus." There is also evidence that Bradshaw had the ability and authority to control how he performed his work, specifically when he chose, how much he chose and how he chose. Hy Grade had no policies, rules or procedures that Bradshaw was required to follow, and there is no evidence that anyone with Hy Grade had any ability to direct his work except as to the results. Smith's testimony regarding whether Bradshaw was authorized to use explosives on the Ponderosa and that she would have "minded" or not approved if he had hired out his work to third parties is subject to conflicting interpretation. Moreover, there is testimony that Bradshaw had hired third parties to do stump removal. Accordingly, viewed in the light most favorable to Defendants, the record does not establish as a matter of law that Smith controlled Bradshaw's manner and method of performance.

As to the other factors, there is evidence that the work Bradshaw performed on the Ponderosa required particular skills that were performed without supervision. Indeed, Smith testified that Bradshaw knew more about what to do on the pecan grove than she did. Bradshaw did not work exclusively for Hy Grade, but had a full-time job with a rock quarry, a distinct

---

[21] *See Brillhart v. Scheier*, 758 P.2d 219, 223 (Kan. 1998).

[22] *Mitzner ex rel. Bishop v. State*, 891 P.2d 435, 437–38 (Kan. 1995) (citations omitted).

business from the business of Hy Grade at the time of his injury. Although Smith testified that she was not aware of Bradshaw holding himself out to the public for farm-related work, there is no evidence in the record regarding whether he in fact did such work for anyone else. While Bradshaw used Hy Grade's equipment, the circumstances surrounding his form of compensation are less than clear. According to Defendants, Bradshaw received a W-2 from Hy Grade for many years while he was a full-time employee for the company's construction business, and continued to do so after Hy Grade's business changed "because it had always been done that way," not because Smith made an informed and deliberate decision to pay Bradshaw as a W-2 employee.

Reviewing all of the evidence in the light most favorable to Defendants, a rational trier of fact could conclude there was an independent contractor relationship between Hy Grade and Bradshaw. Moreover, Plaintiffs do not argue, nor does the record show, that Bradshaw's injuries were sustained within the scope of the alleged employment with Hy Grade, as required by the terms of the policies. Because Plaintiffs bear the burden of proving the exclusion applies, it would be improper for the Court to grant summary judgment on these disputed material issues of fact.

### B. Motion to Strike Demand for Jury Trial

Plaintiffs move pursuant to Federal Rules of Civil Procedure 12(f) and 39(a)(2) to strike their demand for jury trial. Although Plaintiffs initially requested a jury trial, after discovery they concluded a jury trial was not appropriate and seek to withdraw their request. The Smith Defendants object, arguing that Plaintiffs' motion does not comply with Rule 38(d) and is an improper attempt to deprive Defendants of their right to a trial by jury. Given the extensive amount of time that has transpired pending resolution of the state court proceedings, as well as

the current posture of the case and limited nature of the dispute, the Court will deny Plaintiffs' motion without prejudice to renew its request at the Final Pretrial Conference.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiffs' Motion for Summary Judgment (Doc. 58) is **denied**; Plaintiffs' Motion to Strike Demand for Jury Trial (Doc. 56) is **denied** without prejudice;

**IT IS FURTHER ORDERED** that the Bradshaw Defendants' Motion to Strike Affirmative Defense (Doc. 60) is **moot**.

**IT IS SO ORDERED.**

Dated: September 29, 2017

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE